# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## FT. MYERS DIVISION

### CASE NUMBER: 2:20-cv-861-FtM-JLB-MPM

TERRACE III AT HIGHLAND WOODS
ASSOCIATION, INC.,

     Plaintiff,

v.

EMPIRE INDEMNITY INSURANCE
COMPANY,

     Defendant.

_____/

### PLAINTIFF'S RESPONSE TO DEFENDANT'S
### "POSITION ON SCOPE OF DISCOVERY"

Plaintiff, TERRACE III AT HIGHLAND WOODS ASSOCIATION, INC. ("TERRACE III" or "Plaintiff"), files this Response[1] to Defendant, EMPIRE INDEMNITY INSURANCE COMPANY'S ("Empire Indemnity" or "Defendant"), "Position on Scope of Discovery" (Doc. 37), and further states:

### FACTS AND PROCEDURAL HISTORY

This dispute arises from losses sustained to Terrace III's property as a result of Hurricane Irma. At the time of the loss, Terrace III's property was insured by

---

[1] Terrace III's current efforts through this litigation to enforce the subject appraisal award should not be construed as acts inconsistent with its right to appraisal of the amount of the loss and thus waiver of the same. In an abundance of caution, Terrace III reserves all rights it has to appraisal of the amount of the loss and waives none.

Empire Indemnity.  Because of a disagreement as to the amount of the loss, the parties entered into an appraisal agreement to determine the amount of the loss via the appraisal process.  The appraisal ultimately resulted in an appraisal award, which Empire Indemnity has refused to pay.

As a result, Terrace III was forced to file suit to attempt to enforce the appraisal award (or seek a second appraisal).  In doing so, it filed a motion seeking summary judgment for Empire Indemnity's breach of the appraisal agreement, or in the alternative to have the appraisal award confirmed by this Honorable Court (Doc. 17).  This motion was later amended (Doc. 19).  In response, Empire Indemnity filed a motion seeking to defer a ruling on the matter so it could engage in discovery (Doc 18), which was granted.

This Honorable Court recently held a status conference regarding the proposed scope of the discovery.  The Court ordered counsel for the parties to confer regarding the proposed scope of the discovery, and if they could not come to an agreement, to have Empire Indemnity file a brief outlining its proposed scope of discovery, and for Terrace III to file a response two weeks later.

## TERRACE III'S POSITION ON EMPIRE INDEMNITY'S PROPOSED DISCOVERY

Although Empire Indemnity filed an affidavit in support of its Motion to Defer (Exhibit "B" to Doc. 18), which outlined the discovery it sought in an effort to oppose Terrace III's Motion for Summary Judgment, Empire Indemnity has

now expanded on the scope of that discovery. <u>See</u> Empire Indemnity's "Position on Scope of Discovery" (Doc. 37).

Terrace III will address Empire Indemnity's proposed scope of discovery in the order it was presented in Defendant's "Position on Scope of Discovery."

### A.    Corporate Representative of Terrace III

**Empire Indemnity's Position:** Defendant seeks to depose and obtain records from Terrace III's corporate representative to determine: (1) the status of the repairs to Terrace III's property and the cost of such repairs; and, (2) whether Terrace III complied with two pre-conditions to appraisal: (a) producing certain documents to Empire Indemnity and/or allow Defendant to access such documents; and, (b) submitting to an examination under oath.

**Terrace III's Position:** As to subpart (1) noted above, Plaintiff does not object to this discovery.  As to subpart (2), Plaintiff objects to this discovery for the following reasons.

Terrace III satisfied its obligation to provide the documents or access to the same as: they were delivered to Empire Indemnity's counsel on or about March 23, 2020; and, a representative of Empire Indemnity (Mr. Scott Klaben) personally inspected records on April 9, 2020 at Terrace III's counsel's office.  And, on April 20, 2020, Terrace III satisfied its obligation to submit to an EUO, which was

conducted by Empire Indemnity's own counsel (Mr. David Burr).  Defendant is well aware of such compliance.

**To date, Empire Indemnity has not provided even one example of how Terrace III may have failed to comply with these pre-conditions.**  Moreover, these pre-conditions were completed to the satisfaction of Empire Indemnity and its counsel as Defendant's counsel himself authorized the umpire to proceed with the appraisal process.  More specifically, on April 14, 2020, Plaintiff's counsel sent an email to Mr. Richard Myers letting him know the parties had selected him as the umpire for the appraisal. See Exhibit "A."  In response, Mr. Myers responded stating, in part as follows, and asking for the email addresses for the two appraisers:

> . . . thank you for forwarding the appraisal agreement to me. Can you please forward Mr. Lewis' and Mr. Keys' email addresses to me so I can send out the agreement?

See Exhibit "B."

On April 17, 2020, Plaintiff's counsel provided the umpire with the email address for the Plaintiff's appraiser. See Exhibit "C."  On April 19, 2020, Defendant's counsel provided the umpire with the email address for the Defendant's appraiser. See Exhibit "D."  The umpire then responded to Defendant's counsel's email stating: "Thank you, David. I'll contact the appraisers

and we'll start moving forward." <u>See</u> Exhibit "E."  Defendant's counsel responded by stating, in part:

> **Prior to the appraisal process commencing, the parties have agreed that Terrace III will complete an examination under oath, which is scheduled for today. Please hold off until that is completed.**

<u>See</u> Exhibit "F."[2]  The umpire then responded, stating: **"Thank you, David. Just let me know when we're good to go."** <u>See</u> Exhibit "G."  A few days later, Defendant's counsel followed-up with the umpire stating: **"Good evening, Mr. Myers: The EUO is completed. Please proceed. Thank you[.]"** <u>See</u> Exhibit "H." The Umpire then responded stating: "Thank you for the update David. I'll get started on this right away." <u>See</u> Exhibit "I."

As can be seen, Empire Indemnity, through its own counsel, acknowledged that the post-loss obligations were no longer at issue and the appraisal could proceed.  Nevertheless, Empire Indemnity and its counsel now seek to go on a "fishing expedition" to attempt to find some form of potential non-compliance – which Defendant has absolutely no proof of and at this point, is beyond even speculation.  Consequently, there is no justification for the proposed discovery as to these issues.

### B.   Taylor Bach (assist to Mr. George Keys, Terrace III's appraiser)

---

[2] The reason Empire Indemnity's counsel did not mention the document production was because by that point, Terrace III had already complied with that condition.

**Empire Indemnity's Position:** Defendant seeks to depose and obtain records from Ms. Bach regarding her affidavit, which was used to support Terrace III's Motion for Summary Judgment.

**Marengo's Position:** Plaintiff generally does not object to the proposed discovery with regard to the timing of the events of the appraisal process, however, Terrace III objects to any inquiries regarding the basis of the appraisal award and/or the decision making involved in the appraisal process and all associated issues. See First Protective Ins. Co. v. Hess, 81 So. 3d 482 (Fla. 1st DCA 2011)(affirming the trial court's decision to confirm an appraisal award where the trial court held that testimony from the members of the appraisal panel (and perhaps others who participated in the appraisal process) as to the basis for the award was not permitted by the policy or Florida law.).

C.    **George Keys (appraisal panel member (Terrace III's appraiser))**

**Empire Indemnity's Position:** Defendant seeks to depose Mr. Keys and obtain his file regarding the following issues: (1) whether the panel "fully completed" the appraisal award form; (2) the accuracy of the figures in the award; (3) whether the panel exceeded its authority by determining the amount of loss for ordinance or law was $0.00; (4) the timing of the award; (5) how the appraisal was conducted; (6) whether elements of the award are covered as part of actual cash value ("ACV") or replacement cost value ("RCV"); (7) whether the RCV amounts

6

in the award include costs associated with ordinance or law; (8) whether labor costs were depreciated; (9) whether the award includes costs for matching; (10) whether the award includes amounts to fix damage caused by replacement of windows and doors; and, (11) the kind and quality of the materials that formed the basis for the award.

**Terrace III's Position:** Plaintiff objects to Defendant's proposed scope of discovery for the following reasons.

### 1. Discovery as to the Appraisal Panel Regarding the Basis of the Appraisal Award is Impermissible Under Florida Law

Nearly all of what Empire Indemnity seeks involves the decision-making process of the appraisal panel. Despite the fact that Florida law prohibits such inquiries, Empire Indemnity falsely and misleadingly claims that "there is no bar" to deposing any member of the appraisal panel. In support of its position, Empire Indemnity cites to several cases, however, none of them are binding on this Honorable Court as to this issue. Rather, First Protective Ins. Co. v. Hess, 81 So. 3d 482 (Fla. 1st DCA 2011), which prohibits inquiries regarding the information Defendant seeks, is the sole controlling authority on this issue.

### a. Discovery Regarding the Basis for the Appraisal Award Should Not Be Permitted Because Florida Law Prohibits this Honorable Court from Looking Beyond the Face of the Appraisal Award and Considering Extrinsic Evidence to Determine the Basis for the Award

**In Florida, "a trial court may not look beyond the face of an appraisal**

7

**award and consider extrinsic evidence to determine the basis for the award."**
First Protective Ins. Co. v. Hess, 81 So. 3d 482 (Fla. 1st DCA 2011). [Emphasis added].

Hess is a case that involved a disputed property insurance claim where the appraisal process was utilized to determine the amount of the loss.  The insured's policy contained certain limitations on specific categories of damages. For example, the limit for loss to jewelry was $1,000.00.

An appraisal award was ultimately issued by the umpire, which included an award under the personal property coverage section.  However, the award did not include an itemization of the lost personal property or the corresponding values for such property.

The insurer then attempted to deduct from the award, limitations in the policy for specific categories of damages.   In response, the insured filed a complaint seeking confirmation of the appraisal award.  The trial court ruled in favor of the insured, explaining:

> Items such as the deductible and prior payments may be excluded from the amount owed without the Court having to hear extrinsic evidence from the appraisers as to the basis for the award and the reasons for the amounts awarded. The same is not true for deductions based upon special limits of liability. **In those cases, the Court would, by necessity, be required to hear testimony from the members of the appraisal panel (and perhaps others who participated in the appraisal process) as to the basis for the award to make these**

8

> **deductions. The Court agrees with Plaintiff that this sort of inquiry behind the appraisal award is not contemplated by the policy, nor permitted by Florida law.**

Id. [Emphasis added].

The insurer then challenged on appeal the trial court's ruling confirming the appraisal award.  **The appellate court affirmed the trial court's ruling and in doing so held that "a trial court may not look beyond the face of an appraisal award and consider extrinsic evidence to determine the basis for the award."** Id. **It also held "[a] trial court is not permitted to consider extrinsic evidence in applying policy limitations to an appraisal award," and "the trial court is prohibited from holding a hearing to determine the basis of the appraisal award."** Id.

The court explained that if it had attempted to apply certain limitations in the policy using extrinsic evidence, it would have been doing so without the direct guidance from the appraisal panel.  The court noted that this is prohibited because "the appraisers are charged with determining the value of the lost property." Id.

Based on the foregoing limitations pursuant to Florida law, and the fact that the face of the appraisal award contains no deficiencies, this Honorable Court should not permit discovery as to the appraisal panel.

> i.   **The Decision in Hess Prohibiting Inquiries Behind the Face of the Appraisal Award is the Sole Controlling Authority on this Issue in Florida and this Honorable Court is Bound to Adhere to It**

This Honorable Court presides over this case based on diversity jurisdiction. As such, this Honorable Court must apply state substantive law (Florida law). See Roberts & Schaefer Co. v. Hardaway Co., 945 F. Supp. 247, 251 (M.D. Fla. 1996).

"In diversity cases, 'the rule is that, absent a decision from the state supreme court on an issue of state law, [the federal courts] are bound to follow decisions of the state's intermediate appellate courts unless there is some persuasive indication that the highest court of the state would decide the issue differently.'" Palaxar Grp., LLC v. Williams, No. 6:14-cv-758-Orl-28GJK, 2014 U.S. Dist. LEXIS 146681, at *36 (M.D. Fla. Oct. 2, 2014). The decisions of the district courts of appeal represent the law of Florida unless and until they are overruled by the Florida Supreme Court. Id. "Thus, in the absence of interdistrict conflict, district court decisions bind all Florida trial courts." Id.

"A [federal]    district court must     adhere     to     an     intermediate state court decision even if the federal court does not agree with the state court's reasoning or the outcome which the decision dictates." Id.

Hess is the only case at the intermediate state court level  in Florida (the district courts of appeal) that has addressed the issue in dispute here prohibiting inquires behind the face of an appraisal award. And, the Florida Supreme Court has not addressed this issue. As such, this Honorable Court must adhere to the holding in Hess in this matter.

10

Although Defendant has cited to cases it suggests support its position, none of them are binding on this Honorable Court for the following reasons.

- Fisher v. Certain Interested Underwriters at Lloyds Subscribing to Contract #242/99, 2004 WL 5669737 (Fla.Cir.Ct.): This opinion was issued by a Florida circuit court.  As such, it has no precedential value and is not binding on this Honorable Court.

- Fisher v. Certain Interested Underwriters, 930 So. 2d 756 (Fla. 4th DCA 2006): This opinion does not address the issue in dispute here in any way.  Although the trial court below permitted testimony of the panel at a hearing, that was not the subject of a dispute in the case at the trial level or the appellate level.  As such, the issue was not addressed in this opinion and provides no authority contrary to Hess.  In other words, this case does not present an interdistrict conflict.  Thus, it doesn't change the fact that Hess is the controlling authority on the discovery in dispute in this case.

- Pine Ridge North II Condominium Ass'n, Inc. v. Fla. Ins. Guar. Ass'n, Inc., 2010 WL 2832868 (Fla.Cir.Ct.): This decision was issued by a circuit court.  As such, it has no precedential value and is not binding on this Honorable Court.

- Sands on the Ocean Condo. Ass'n v. QBE Ins. Corp., 22 Fla. L. Weekly

Fed. D273 (U.S. S.D. Fla. March 23, 2009): Although the court considered affidavits and testimony from the appraisers, it did so without relying on any legal authority to support such actions. Moreover, the decision is not binding on this Honorable Court.  As such, this opinion should be disregarded.

- <u>Weinger v. State Farm Fire & Cas.</u>, 620 So. 2d 1298 (Fla. 4th DCA 1993): The issue in <u>Weinger</u> involved the impartiality of an umpire based on a continuing financial relationship with one of the parties.  It did not determine whether an inquiry is permitted behind the face of the appraisal award.  As such, this case does not present an interdistrict conflict with <u>Hess</u>.  Consequently, this case has no precedential value with regard to the issue in dispute.

Based on the foregoing, this Honorable Court should disregard the cases cited by Empire Indemnity, and adhere to the holding in <u>Hess</u>.

**ii.   The Decision in <u>Hess</u> Has Been Acknowledged and Followed by the Federal Courts**

<u>Charlevoix Equity Partners Intl., Inc. v. AIG Prop. Cas. Co.</u>, Civil Action No. 16-24764-Civ-Scola, 2018 U.S. Dist. LEXIS 135238 (S.D. Fla. Aug. 10, 2018) is a case that involved an insurance claim where appraisal was used to determine the amount of the loss.  When the policyholder sought to vacate the award, the court denied the requested relief and in doing so, it cited to the <u>Hess</u> opinion and held

"delving into the arbitrator's process, absent an indication the arbitrator ultimately decided an issue beyond his authority, would be improper. *See First Protective Ins. Co. v. Hess*, 81 So. 3d 482, 485 (Fla. 1st DCA 2011) ("After the parties have gone through the appraisal process, the trial court may not consider evidence beyond the face of the appraisal award.")." Id. at *9. [Emphasis added].

It is important to note that the only issues that have been plead as to the panel allegedly going beyond its authority in this matter are as to timing, ordinance or law, and the form of the award.  Those issues are irrelevant for the reasons noted in the pages below (timing, pages 20-21; ordinance or law, pages 19-20; form of the award, pages 18-19).

### iii.   Independent of <u>Hess</u>, the Federal Courts Have Come to the Same Conclusion as the Holding in <u>Hess</u>

<u>Jin Zhi Star LT. LLC v. Am. Zurich Ins. Co.</u>, No. 08-61191-CIV-MORE, 2011 U.S. Dist. LEXIS 160662, at *10 (S.D. Fla. June 15, 2011), report and recommendation adopted, No. 08-61191-CIV-MORE, 2011 U.S. Dist. LEXIS 160663, at *3 (S.D. Fla. Aug. 11, 2011) is a case that involved a property insurance claim where the amount of the loss was determined via the appraisal process.  In fact, the insurance company involved in <u>Jin Zhi Star</u> is affiliated with Empire Indemnity, and was represented by Empire Indemnity's current counsel.

After the appraisal award was issued in <u>Jin Zhi Star</u>, the insurance company sought to engage in discovery as to the appraisal panel.  The court denied such

requested relief by holding:

> **Defendant may not . . . challenge the appraisal process itself in this proceeding' . . . and . . . We cannot sanction Defendant's attempt to second-guess the appraisal panel's determination of the amount of the loss by reviewing what evidence the panel considered or how it reached its ultimate decision. The appraisal panel was clear: after inspecting the property and considering the evidence, it determined that the amount of the damage or repairs necessary to the insured property was approximately $14.4 million. [D.E. 148-1]. This valuation determination is final and binding on the parties, in accordance with the express terms of the insurance policy that Defendant wrote."**

[Emphasis added].

The policy in the instant case has the same language as to the binding effect of amount of the award as determined by the panel "The appraisers will state separately the value of the property and amount of loss. If they fail to agree, they will submit their differences to the umpire. **A decision agreed to by any two will be binding.**" <u>See</u> "FLORIDA CHANGES - MEDIATION OR APPRAISAL (COMMERCIAL RESIDENTIAL PROPERTY)"; form IL 01 12 06 10 of the policy attached as Exhibit "J." [Emphasis added].

### b. The Protections Afforded to Members of an Appraisal Panel by <u>Hess</u> are Consistent with the Protections Afforded to Other Decisionmakers

Although interviews of jurors are permitted, it is only proper in cases involving matters extrinsic to the verdict, such as arrival at the verdict by lot or

quotient, improper contact with a juror, or misconduct of a juror. <u>State, Dept. of Transp. v. Fortune Federal Sav. and Loan Ass'n</u>, 496 So. 2d 960 (Fla. 2nd DCA 1986). **An investigation of the subjective decision-making process of the jury is not permissible."** <u>Id.</u> [Emphasis added].

Likewise, "while a party may be allowed to take a deposition of a trial judge, it should only occur when the testimony of the judge is "absolutely necessary to establish factual circumstances not in the record." <u>Rodriguez v. State</u>, 919 So. 2d 1252 (Fla. 2005). However, **"the judge's thought process should not be violated."** <u>Id.</u> [Emphasis added].

Similarly, the Florida Arbitration Code generally provides arbitrators with immunity from discovery via Florida Statute § 682.051 (entitled "Immunity of arbitrator; competency to testify; attorney fees and costs"), which states in part:

> **In a judicial, administrative, or similar proceeding, an arbitrator or representative of an arbitration organization is not competent to testify, and may not be required to produce records as to any statement, conduct, decision, or ruling occurring during the arbitration proceeding, to the same extent as a judge of a court of this state acting in a judicial capacity.**

**2. Discovery Regarding the Basis for the Appraisal Award Should Not Be Permitted Because the Determination of the Amount of the Loss is the Exclusive Responsibility of the Appraisal Panel, and the Panel has Fully Discharged Such Responsibility**

Empire Indemnity argues that discovery should be permitted to determine the appraisal panel's basis for the award. However, in doing so, Empire Indemnity

ignores the fact that **in Florida,** if an insurer admits that there is a covered loss (as the Defendant has here), the amount of which is disputed, **"the amount of loss question is for an appraisal panel."** Sunshine State Ins. Co. v. Rawlins, 34 So. 3d 753 (Fla. 3d DCA 2010); State Farm Fire & Cas. Co. v. Licea, 685 So. 2d 1285 (Fla. 1996).  In determining the amount of the loss, the appraisal panel can decide the following: issues of causation[3]; determinations as to the cost of repair or replacement[4]; the method of repair[5]; the scope of repair[6]; and, the requirements of the applicable building codes in order to estimate the cost of repair or replacement.[7]

Pursuant to Florida law, the amount of the loss in appraisal is not for the Empire Indemnity or this Honorable Court to decide.  Rather, that determination is only to be made by the appraisal panel.  Because the panel fully discharged its responsibility and set the amount of the loss, Empire Indemnity cannot now seek discovery to determine if the amount of loss is accurate as to do so would impermissibly re-write the policy and be completely inconsistent with longstanding Florida law regarding the division of responsibility in appraisal.

It is important to note that these concepts were acknowledged by this

---

[3] Johnson v. Nationwide Mut. Ins. Co., 828 So. 2d 1021 (Fla. 2002).
[4] State Farm Fire & Cas. Co. v. Licea, 685 So. 2d 1285 (Fla. 1996).
[5] Cincinnati Ins. Co. v. Cannon Ranch Partners, Inc., 162 So. 3d 140 (Fla. 2d DCA 2014).
[6] Florida Ins. Guar. Ass'n v. Branco, 148 So. 3d 488 (Fla. 5th DCA 2014)), reh'g denied (Oct. 15, 2014).
[7] Noa v. Fla. Ins. Guar. Ass'n, 215 So. 3d 141 (Fla. 3d DCA 2017).

Honorable Court in a case with substantially similar facts.  More specifically, in

Mont Claire at Pelican Marsh Condo. Ass'n v. Empire Indem. Ins. Co., No. 2:19-

cv-601-SPC-MRM, 2021 U.S. Dist. LEXIS 142298, at *17 (M.D. Fla. May 24, 2021),

report and recommendation adopted, No. 2:19-cv-601-SPC-MRM, 2021 U.S. Dist.

LEXIS 141563 (M.D. Fla. July 29, 2021), the Court held **"[t]he law is clear in that**

**the Court may not substitute its judgment for that of the panel" . . . "[r]ather, the**

**amount of loss is a question for the appraisal panel" . . . and, "a determination**

**of the accuracy of the award is beyond the authority of the Court."**

As such, the proposed discovery on the panel should not be permitted.

### 3.  Allowing Appraisal Panel Members to be Deposed is Absolutely Inconsistent with the Purpose and Intent of the Appraisal Process

In Florida, there is an overwhelming preference for the resolution of

conflicts through any extra-judicial means – including appraisal provisions in

property insurance policies – for which the parties have themselves contracted.

State Farm Fire & Cas. Co. v. Middleton, 648 So. 2d 1200, 1201-1202 (Fla. 3rd DCA

1995).  Moreover, "[a]ppraisal clauses are preferred, as they provide a mechanism

for prompt resolution of claims and discourage the filing of needless lawsuits."

Florida Ins. Guar. Ass'n, Inc. v. Olympus Ass'n, Inc., 34 So. 3d 791 (Fla. 4th DCA

2010).

The Defendant agreed to have the amount of the loss resolved via the

appraisal process.  The parties – including Terrace III – then incurred the costs of

involving an umpire to resolve the dispute.  Now, it appears Empire Indemnity is attempting to circumvent the entire appraisal process by second-guessing the award, which absolutely deviates from the purpose and intent of the appraisal process, and functionally renders the Defendant's agreement to proceed with appraisal illusory.

The result Empire Indemnity is seeking would unnecessarily involve the judicial system in nearly any appraisal, which would result in a financial drain to that system, as well as additional and unnecessary costs to policyholders, appraisers, and umpires.  This would set a dangerous precedent.  It would wrongly encourage parties – both plaintiffs and defendants – who are unhappy with their appraisal awards to race to the courthouses to litigate their disputes (which would ultimately render the appraisal process absolutely meaningless).[8] The unfortunate result would be more litigation, the very thing that the appraisal process is intended to curb.

This concern was recognized by this Honorable Court in <u>Mont Claire at Pelican Marsh Condo. Ass'n v. Empire Indem. Ins. Co.</u>, No. 2:19-cv-601-SPC-MRM, 2021 U.S. Dist. LEXIS 141563, at *5 (M.D. Fla. July 29, 2021), where it held:

> **And imposing a standard that allows awards to be vacated because *an* amount (not *the* amount) was listed**

---

[8] In doing so, appraisers and umpires could potentially submit themselves to a deposition for every appraisal they handle, which would be a financial drain, and may discourage many who serve the industry to no longer offer such services.

**would come with its own problems. For instance, it may render appraisal awards impotent by subjecting them to review for even a one-cent dispute in valuation. Such a result would be far from appraisals' intended purpose: enforceability and finality.**

**4.    Discovery Beyond the Face of the Appraisal Award Regarding the Basis for the Award Should Not Be Permitted Because the Award Can be Modified or Corrected Only as to an Evident Miscalculation or Mistake on the Appraisal Award**

This Honorable Court recently held that "Florida's Arbitration Code applies to motions to set aside invalid appraisal awards." <u>Mont Claire at Pelican Marsh Condo. Ass'n v. Empire Indem. Ins. Co.</u>, No. 2:19-cv-601-SPC-MRM, 2021 U.S. Dist. LEXIS 142298, at *11 (M.D. Fla. May 24, 2021), report and recommendation adopted, No. 2:19-cv-601-SPC-MRM, 2021 U.S. Dist. LEXIS 141563 (M.D. Fla. July 29, 2021).  Likewise, it applies to modification of an appraisal award. <u>Id.</u>

Pursuant to the Florida Arbitration Code (Florida Statutes § 682.14), a court can only modify or correct an award if:

> (a) There is an evident miscalculation of figures or an evident mistake in the description of any person, thing, or property referred to in the award.; (b) The arbitrators have awarded upon a matter not submitted in the arbitration and the award may be corrected without affecting the merits of the decision upon the issues submitted.; or, (c) The award is imperfect as a matter of form, not affecting the merits of the controversy.

Subsections (b) and (c) above are irrelevant because the parties agreed to an appraisal award form and the panel used the required form for each line item

which was awarded.  As such, the only basis for this Honorable Court to modify or correct the award at issue is based on "an evident miscalculation of figures or an evident mistake in the description of any person, thing, or property referred to in the award."  Because any modification or correction is limited to those based on an evident miscalculation or mistake in the award, which can be determined on the face of the award, discovery on the panel is unnecessary.

     **5.**     **Additional Reasons Why Discovery is Improper as to the Appraisal Panel**

     **a.**     **Discovery Regarding Whether the Appraisal Panel Utilized and "Fully Completed" the Appraisal Award Form is Unnecessary Because that Issue Can Be Determined from the Face of the Award, and this Exact Issue was Determined Adversely to Defendant in <u>Mont Claire</u>**

The appraisal agreement states, in part: "The Parties agree to the use of the Award Form attached to this Agreement as Exhibit "B" . . . "  The umpire ultimately issued an appraisal award by using the same form attached as Exhibit "B" to the appraisal agreement.  As such, a determination as to whether the appraisal panel "utilized and fully completed" the award form can be determined via the face of the award.  Defendant is in possession of the appraisal award and can compare it to the form attached as Exhibit "B" to the appraisal agreement and confirm that they are the same.

And, this exact issue was addressed in <u>Mont Claire</u> by this same defendant. There, this Honorable Court held:

> "on the face of the Appraisal Award, it seems that the appraisal panel did precisely what it was asked––*i.e.*, it determined the amount of loss and separately stated the amount attributable the Ordinance and Law coverage on the Appraisal Award Form. Because the panel decided only issues related to the resolution of the issues submitted for appraisal – the amount of the loss attributable to each line item – the Undersigned finds that the appraisal panel did not exceed its authority."

See <u>Mont Claire</u>, 2021 U.S. Dist. LEXIS 142298, at *15-16.  Consequently, there is no basis to allow discovery as to this issue.

> **b.    Discovery Regarding the Accuracy of the Award is Improper Because this Honorable Court Cannot Substitute its Judgment for that of the Appraisal Panel, and a Determination as to the Accuracy of the Award is Beyond the Authority of this Court**

This issue has already been decided by this Honorable Court as to this same Defendant.  **"The law is clear in that the Court may not substitute its judgment for that of the [appraisal] panel."** <u>Mont Claire</u>, 2021 U.S. Dist. LEXIS 142298, at *17.  **And, "a determination of the accuracy of the award is beyond the authority of the Court." <u>Id.</u>**  Based on the foregoing, discovery as to this issue is improper.

> **c.    Discovery Regarding the Amount the Panel Attributed to Costs Associated with Ordinance or Law is Improper**

Again, the amount of loss question is for the appraisal panel. <u>See</u> <u>State Farm Fire & Cas. Co. v. Licea</u>, 685 So. 2d 1285 (Fla. 1996).  And, this Honorable Court cannot substitute its judgment for that of the appraisal panel. <u>Mont Claire</u>, 2021 U.S. Dist. LEXIS 142298, at *17.  Moreover, "a determination of the accuracy of the

award is beyond the authority of the Court." Id.

In addition to the issues above, this exact issue was determined by this Honorable Court as to this same Defendant in Mont Claire, where the Court held **"to the extent Defendant argues that it is "impossible" for $0.00 to be attributable to the Ordinance and Law coverage, the Undersigned finds that such a determination is beyond the Court's authority."[9]** Id. at *14. [Emphasis added]. The Court further held "even if the Court were to find that the appraisal panel erred in attributing $0.00 to the Ordinance and Law coverage, such an error would not exceed the panel's authority." Id. at *17. In that regard, the Court found:

> **Thus, if the amount were incorrect, be it because the panel erred in judgment or because the panel misinterpreted the Appraisal Agreement, the Undersigned finds that the panel did not exceed its authority because it did as it was tasked--_i.e._, it determined the amount of loss and separately specified the amount attributable to the Ordinance and Law coverage.**

Id. at *17-18.

Thus, not only would discovery on this issue be improper, it is entirely unnecessary.

### d.   Discovery Regarding the Timing of the Award is Unnecessary

---

[9] The Court found that the appraisal agreement "did not require that that the panel reach a threshold value." Id. at *16. The appraisal agreement in this matter is substantially similar to the one in Mont Claire and requires no such threshold.

As to timing issues, Empire Indemnity wrongly claims that the panel exceeded its authority because it did not complete the process within 90 days as required the appraisal agreement.  This argument fails for the following reasons and as such, discovery regarding this issue is unnecessary.

### i.    Pursuant to the Arbitration Code, Empire Indemnity Waived Its Right to Object to the Timing of the Award

Pursuant to the Florida Arbitration Code (Florida Statutes § 682.09), "[a] party waives any objection that an award was not timely made unless the party gives notice of the objection to the arbitrator **before** receiving notice of the award." [Emphasis added].  Empire Indemnity made no such timely objection.  As such, this issue has been waived by Defendant.  Moreover, because time was not "of the essence" as to the appraisal agreement, the deadline to complete the appraisal was not a material term, and an award issued after such deadline does not render the award unenforceable. See Centurion Air Cargo v. UPS Co., 420 F.3d 1146 (11th Cir. 2005).

### e.    The Issue of How the Appraisal was Conducted is Irrelevant and Unnecessary as There are No Formal Rules for Appraisal Proceedings

There are no formal rules for how appraisal proceedings are to be conducted.   "Unlike arbitration procedures, appraisals are less formal proceedings, where the umpire independently attempts to resolve any differences in the appraisals offered by both sides." Preferred Nat. Ins. Co. v. Miami Springs

<u>Golf Villas, Inc.</u>, 789 So. 2d 1156 (Fla. 3d DCA 2001).  And, while Defendant had every opportunity to mandate certain rules for the appraisal in his matter via the policy and/or the appraisal agreement, it didn't do so.  As such, discovery as to this issue is absolutely irrelevant and unnecessary.

      **f.**    **Discovery as to Allocation of Costs in the Award, Whether Labor Costs Were Depreciated, Whether the Award Includes Costs for Matching or Amounts to Fix Damage Caused by Replacement of Windows and Doors, and the Kind and Quality of the Materials that Formed the Basis for the Award is Prohibited Because It Would Impermissibly Involve the Basis for the Panel's Award, Which Would Violate <u>Hess</u>, and It Would be Inconsistent with the Other Legal Authorities Cited Herein**

All of these issues would impermissibly require inquiries behind the face of the appraisal award in violation of <u>Hess</u>.  And, they would run counter to the other authorities contained herein, which provide that the exclusive authority to determine the amount of the loss is for the appraisal panel (<u>State Farm Fire & Cas. Co. v. Licea</u>, 685 So. 2d 1285 (Fla. 1996)), and that the determination of the amount of the loss by the panel cannot be substituted for a determination of the court (<u>Mont Claire</u>, 2021 U.S. Dist. LEXIS 142298, at *17).  As such, the proposed discovery should not be permitted.

    **D.**    **Richard Myers (Appraisal panel member – umpire)**

**Empire Indemnity's Position:** Defendant suggests that if it cannot obtain what it needs from Mr. Keys (Terrace III's appraiser), it would seek to depose Mr. Myers (the umpire) and obtain his file.

**Terrace III's Position:**  Plaintiff objects to such discovery for the reasons noted above.  Moreover, Empire Indemnity is contractually prohibited from such discovery as it signed an agreement with Mr. Myers' employer (JAMS) before the appraisal began that essentially gave Mr. Myers immunity from discovery. <u>See</u> JAMS' "Umpire Engagement Agreement" attached as Exhibit "K."   That agreement specifically states:

> The Umpire shall not be called to testify to his/her decision-making considerations, if applicable, or to testify to what was stated, argued, or testified in the process for which the Umpire is providing services.
>
> * * *
>
> The participants also agree that the Umpire is not a necessary party to any future action and is disqualified as a witness; nor shall the Umpire, JAMS or JAMS' employees or agents be called as a witness or as an expert regarding any proceeding involving any of the participants and in any manner relating to the dispute for which the Umpire is providing services.

Empire Indemnity breached the insurance policy, and the appraisal agreement at issue.  Now, it seeks to breach yet another agreement with JAMS and the umpire.  And, Empire Indemnity is not shy about this issue.  Despite the undersigned mentioning this contract (with JAMS) during the recent status conference, Empire Indemnity has boldly disregarded the issue and completely ignored its contractual obligations to yet another party.  It begs the question, when will Empire Indemnity stand by its word and honor a contract?

In any event, discovery on the umpire is not permitted pursuant to Florida law (Hess), and Empire Indemnity is contractually prohibited from seeking discovery from him.  As such, this discovery should not be allowed.

## Conclusions

Based on the foregoing, Terrace III respectfully requests for this Honorable Court to limit the proposed scope of discovery consistent with the Plaintiff's position outlined herein.

**Terrace III does not waive any objections to the discovery sought by the Empire Indemnity by failing to object herein.**

Respectfully submitted,

*/s/ Kurtis Jay Keefer* _____
CARY J. GOGGIN
Florida Bar No.: 92404
KURTIS JAY KEEFER
Florida Bar No.: 0668011
GOEDE, DEBOEST & CROSS, PLLC
6609 Willow Park Drive, Suite 201
Naples, FL 34109
(239) 331-5100 – Telephone
(239) 260-7677 – Facsimile
KKeefer@gadclaw.com
CGoggin@gadclaw.com
JDelgado@gadclaw.com
*Counsel for Plaintiff, Terrace III at*
*Highland Woods Association, Inc.*

## CERTIFICATE OF SERVICE

I certify that on the 24th day of September 2021, I electronically filed the foregoing with the Florida Courts E-Filing Portal which will send notice and a copy of the foregoing to:

J. Pablo Caceres, Esq.
Christian L. Gonzalez-Rivera, Esq.
Donna B. Wood, Esq.
Butler Weihmuller Katz Craig LLP
400 N. Ashley Drive, Suite 2300
Tampa, FL 33602
Tel: 813-281-1900
Fax: 813- 281-0900
cgonzalez-rivera@butler.legal
Secondary:kpadilla@butler.legal
cjenkins@butler.legal
sspatuzzi@butler.legal
*Counsel for Defendant, Empire Indemnity
Insurance Company*

*/s/ Kurtis Jay Keefer*
KURTIS JAY KEEFER, ESQ.